UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:
ANDREW GOESEL,

        Debtor.
_____/

ANDREW GOESEL,

        Debtor/Appellant,
v.　　　　　　　　　　　　　　Case No.  8:16-cv-1108-T-33
　　　　　　　　　　　　　　　　Bankr. No. 8:15-bk-5591

CHRISTINE GOESEL,

        Creditor/Appellee.
_____/

## ORDER

The Debtor, Andrew Goesel is a chiropractor who filed for protection under Chapter 13 of the United States Bankruptcy Code shortly after the completion of his divorce proceedings. His ex-wife, Christine Goesel, filed a secured proof of claim in the amount of $50,000.00, representing her interest in Florida real property, as memorialized in the parties' Marital Settlement Agreement.  The Debtor objected to Christine's claim, and the Bankruptcy Court overruled in part the Debtor's objection. The Debtor filed an appeal, which is ripe for the Court's review.  As stated below, the Court reverses the Bankruptcy Court's ruling.

**I.    Background**

In connection with their divorce, the Debtor and Christine[1] entered into a Marital Settlement Agreement on March 18, 2015. (Doc. # 5-16). As will be more fully discussed below, the Marital Settlement Agreement called for Christine to receive the marital home in Illinois, as well as a $50,000.00 lien on real property that the couple own in Nokomis, Florida.

On May 28, 2015, approximately two months after executing the Marital Settlement Agreement in Illinois, the Debtor filed a voluntary petition for relief under Chapter 13 in the United States Bankruptcy Court for the Middle District of Florida. (Doc. # 5-14). The Debtor, who was unemployed at the time of the petition date, listed his address as 227 Laurel Hollow Drive in Nokomis, Florida. (Bankr. Doc. # 1 at 26). He specified that he is a "joint owner with Christine Schmall (Goesel) who has [$]50,000.00 interest per Divorce Decree - Total Value $151,800 - $50,000 for wife interest = 101,800.00." (Id. at 8). The Debtor also stated that Christine holds an unsecured nonpriority claim in the amount

---

[1] Because some of the parties share the same last name, the Court will refer to some parties by their first name to avoid confusion.

of $85,000 pursuant to "property settlement/divorce litigation." (Id. at 20).

In conjunction with the Petition, the Debtor filed a proposed Chapter 13 Plan. (Bankr. Doc. # 2). That Plan proposed a payment of $9,454.64 to general unsecured creditors. (Id. at 3). On July 21, 2015, the Chapter 13 Trustee filed an "Unfavorable Recommendation and Objection Concerning Confirmation of the Plan." (Bankr. Doc. # 15).

On August 14, 2015, Christine filed Claim 11 as a secured claim in the amount of $50,000, mistakenly making reference to a "2003 Sundowner Horse Trailer." (Bankr. Claim 11-1). She thereafter amended her claim on November 12, 2015, to reflect that she was making a claim to "real estate, 227 Laurel Hollow Dr., Nokomis, FL," rather than a horse trailer. (Bankr. Claim 11-2). Christine filed a copy of the Judgment for Dissolution of Marriage, entered by the Illinois state court, as well as the Marital Settlement Agreement, to demonstrate her status as a secured creditor.

Relevant to Christine's claim to the Florida real property, the Marital Settlement Agreement reflects the parties' agreement that the marital residence in Illinois would be awarded to Christine "free and clear of any claims by the Husband." (Doc. # 11-2 Part 2 at 17). With respect to the

"Florida Residence" the Marital Settlement Agreement specified:

> during the course of the parties' marriage, they acquired the improved real estate located at 227 Laurel Hollow Dr., Nokomis, Florida. The parties stipulate that the value of said property is one hundred ninety-five thousand dollars ($195,000.00). Husband shall pay Wife the sum of fifty thousand dollars ($50,000.00) within thirty (30) days as and for her share of the equity in said property. In the event the Husband does not pay to Wife said fifty thousand dollars ($50,000.00) for her share of the Nokomis, FL property within 30 days, the property shall be listed for sale immediately with a mutually agreed upon licensed real estate broker. Wife shall receive the first fifty thousand dollars ($50,000.00) of any net proceeds of the sale of said property and the remaining proceeds shall be awarded to Husband subject to payment of Ms. Nancy Donlon as provided herein. Judgment enters in favor of Wife against Husband in the amount of fifty thousand dollars ($50,000.00) and shall constitute a lien on the aforesaid property until paid with statutory interest as provided herein.
> Husband shall, in addition to payment of fifty thousand dollars ($50,000.00) and statutory interest as provided herein refinance, if necessary, the Florida property to remove the Wife from any liability under the existing mortgage should he decide to maintain the same. Upon payment of the monies due as provided herein and removal of any liability under any existing mortgage, Wife shall deliver, upon request, the quit claim deed previously executed as provided herein conveying all right title and interest to Husband.
> The Husband shall maintain and keep current all expenses including, but not limited to, mortgage, taxes, homeowner's insurance associated with said property until such time that payment is made to Wife.
> In the event Husband does not reside in the Florida residence, Husband shall utilize rent

>   proceeds to maintain and keep current all expenses, including by not limited to, the mortgage, taxes, homeowner's insurance. Court reserves jurisdiction to address the allocation of any rent additional proceeds derived from said property.
>   The parties shall immediately take the appropriate steps to transfer the Nokomis, Florida property into tenancy by the entirety among both parties until such time that Wife receives her share of the equity in the amount of fifty thousand dollars ($50,000.00). The Wife shall execute a quit claim deed conveying her interest to Husband upon entry of a Judgment for Dissolution of Marriage. Said quit claim deed shall be held by The Law Offices of Edward R. Jaquays until such time that Husband pays fifty thousand dollars ($50,000.00) to Wife as and for her share of the equity in the Florida property.

(Id. at 18-19).

The Debtor objected to Christine's amended claim, arguing, inter alia, "the property listed as security for the claim is jointly owned by Debtor and the Creditor," that Christine's claim is unsecured, and that Christine did not perfect her lien. (Doc. # 5-9). On November 30, 2015, Christine responded to the Debtor's objection to her claim and clarified that "The Final Order of Dissolution [of Marriage] provides that Ms. Goesel retains a lien on the property for the $50,000 until the property is sold." (Doc. # 5-8). Christine further argued: "Even absent the express mention of a lien, in a situation such as this where the spouse is ordered to sell property and pay funds to the spouse from such

sale, this creates a lien against the property to be sold in favor of the ex-spouse. See In re McLain, 533 B.R. 735 (Bankr. C.D. Ill. 2015)." (Id.).

The Bankruptcy Court heard argument on the Debtor's objection to Christine's claim and "overruled in part" the Debtor's objection to Christine's claim. (Bankr. Doc. # 30). The Bankruptcy court held: "Claim # 11 is allowed as a secured claim in the amount of $50,000. To the extent any priority status is requested in claim # 11, such claim is not entitled to priority status." (Id.). The Debtor filed a Motion for Reconsideration (Bankr. Doc. # 32), to which Christine filed a Response (Bankr. Doc. # 37). Christine argued that she is the co-owner of the real property, she had an interest in the real property prior to the entry of the divorce decree, and her interest in the real property can only be eliminated upon payment of the amount required by the divorce decree. (Id. at 1). She also asserted that she holds an equitable lien on the real property. (Id. at 2).

The Bankruptcy Court held a hearing on the Motion for Reconsideration on April 11, 2016, and entered an Order denying the Motion for Reconsideration on April 15, 2016, for the reasons stated at the hearing. (Bankr. Doc. # 45). The Debtor filed an appeal on April 29, 2016. Thereafter, on May

31, 2016, the Bankruptcy Court entered a "Memorandum Opinion Supplementing Order Denying Motion for Reconsideration of Order Overruling in Part Objection to Claim 11 of Christine Goesel." (Doc. # 5-13). The Bankruptcy Court instructed the Clerk's Office to transmit the Memorandum Opinion to the District Court as part of the record on appeal. (Id. at 7). The appeal is ripe for this Court's review.

## II. Standard of Review

Upon entry of a final order by the bankruptcy court, a party may appeal to the district court pursuant to 28 U.S.C. § 158(a). The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir. 1994). This Court reviews de novo the legal conclusions of the bankruptcy court. In re JLJ, Inc., 988 F.2d 1112, 1116 (11th Cir. 1993).

The standard of review employed by this Court in reviewing the bankruptcy court's findings of fact is the clearly erroneous standard of review described in Federal Rule of Bankruptcy Procedure 8013: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility

of the witnesses." See In re Thomas, 883 F.2d 991, 994 (11th Cir. 1989).  A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." Crawford v. W. Elec. Co., Inc., 745 F.2d 1373, 1378 (11th Cir. 1984)(citing United States v. U.S. Gypsum Co., 333 U.S. 364 (1948)).

### III. Analysis

The Debtor correctly frames the issue before this Court as whether Christine, as a judgment holder, "has a valid secured claim on Debtor's property when the judgment holder is a co-owner of said property and the judgment holder failed to record the judgment pursuant to Fla. Stat. § 55.10." (Doc. # 9 at 5).

The Debtor agrees that the divorce decree awarded the Debtor the real property in Nokomis, Florida and the "Debtor was to pay [Christine] an equalization payment of $50,000.00 . . . for a marital property settlement." (Id. at 7). The Debtor recites language within the divorce decree reflecting that a judgment in favor of Christine and against the Debtor in the amount of $50,000 is created and "shall constitute a lien of the aforesaid property until paid with statutory interest." (Id.). However, the Debtor argues that because

-8-

Christine did not perfect the security interest pursuant to Fla. Stat. § 55.10, her claim is unsecured. (Id. at 8).

The Debtor also argues that Christine's "interest as a co-owner of the property does not provide for a lien on [Christine's] portion of the property, which is not property of the bankruptcy estate." (Id. at 9).[2] As demonstrated below, the Debtor's arguments are correct and require reversal of the Bankruptcy Court.

**A.   Christine does not have a Secured Claim**

11 U.S.C. § 506(a) provides that a secured claim is "an allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be."

Before a court can find that Christine has a "secured claim," it must be determined if the property identified as

---

[2] Christine asserts that the Debtor's second argument is not preserved because it was not raised in the Bankruptcy Court and, instead, is raised for the first time on appeal. The Court rejects Christine's argument. The Bankruptcy Court analyzed this exact issue in the Memorandum Opinion dated May 31, 2016, in which the Bankruptcy Court held that Christine's claim is secured by virtue of her ownership of the collateral property. (Doc. # 5-13 at 3).

the security is property of the bankruptcy estate.  Property of the estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

11 U.S.C. § 1306 also defines property of the estate:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title - (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.
>
> <u>Id.</u>

Creditors who assert a secured claim are required to attach evidence of perfection of their security interest. <u>See</u> Fed. R. Bankr. 3001(d)("If a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected."). Christine purported to file a secured claim as an "equitable lien from Divorce Order," identifying the collateral as the Nokomis real property. (Bankr. Claim 11-2). Christine attached the Judgment for Dissolution of Marriage, which incorporated the parties' Marital Settlement Agreement.  As discussed above

at length, that document required the Debtor to pay Christine $50,000 and constituted a lien on the Florida real property until paid with statutory interest. Christine executed a deed relinquishing all of her interest in the property to the Debtor, but it was never delivered to the Debtor.

Because Christine never delivered the deed to the Debtor, there has not been a transfer of her interest in the Florida property to the Debtor. See Mattox v. Mattox, 777 So. 2d 1041, 1043 (Fla. 5th DCA 2001)("delivery of a deed by the grantor and acceptance by the grantee are essential to transfer title."). In addition, although the Judgment and Marital Settlement Agreement certainly contemplated certain exchanges, it did not include language that effectuated a transfer of ownership with respect to the Florida real property.

Here, the Bankruptcy Court held: "because Christine is on title to the Property, her ownership interest is the functional equivalent of a lien and she therefore holds a secured claim." (Doc. # 5-13 at 3). However, the Bankruptcy Court failed to acknowledge that because the security interest is on the portion of the property that Christine owns, it is not secured by property of the estate. As explained by the Debtor, "The Debtor's partial ownership interest in the property is property of the bankruptcy estate, **but**

-11-

[Christine's] partial ownership interest is **not** property of the estate. Since [Christine's] security interest is based on her ownership of the property and such partial ownership is not property of the estate, she cannot have a secured claim in the Chapter 13 case." (Doc. # 9 at 12)(emphasis in original).[3]

### B. Christine Failed to Comply with Fla. Stat. § 55.10

In Weed v. Washington, 242 F.3d 1320, 1322 (11th Cir 2001), the court explained: "While federal law controls the bankruptcy issues . . . state law governs the determination of whether a lien has been created in the context of a bankruptcy proceeding."  And, "It is agreed that state law applies in determining the creation of a lien and the consequences and rights attributable to the lien." Grant v. Kaufman, P.A., 922 F.2d 742, 744 at n.2 (11th Cir. 1991).

Florida law controls the matter here because Christine is trying to assert a lien on real property located in Florida. Christine, as a judgment creditor, was required to comply with Florida Statute section 55.10 to perfect a judgment lien on the Florida real property. See Dyer v. Beverly & Tittle, P.A.,

---

[3] The Court rejects Christine's argument that she has a secured claim against the entire property because she holds a 100% tenancy by the entireties interest in the property. (Doc. # 11 at 2-3). Under Florida Statute section 689.15, when couples that hold property by the entirety get divorced, the parties become tenants in common.

777 So. 2d 1055 (Fla. 4th DCA 2001). Florida Statute section 55.10(1) states:

> A judgment, order, or decree becomes a lien on real property in any county when a certified copy of it is recorded in the official records or judgment lien record of the county, whichever is maintained at the time of recordation, provided that the judgment, order, or decree contains the address of the person who has a lien as a result of such judgment, order, or decree or a separate affidavit is recorded simultaneously with the judgment, order, or decree, stating the address of the person who has a lien as a result of such judgment, order, or decree. A judgment, order, or decree does not become a lien on real property unless the address of the person who has a lien as a result of such judgment, order, or decree is contained in the judgment, order, or decree, or an affidavit with such address is simultaneously recorded with the judgment, order, or decree. If the certified copy was first recorded in a county in accordance with this subsection between July 1, 1987, and June 30, 1994, then the judgment, order, or decree shall be a lien in that county for an initial period of 7 years from the date of the recording. If the certified copy is first recorded in accordance with this subsection on or after July 1, 1994, then the judgment, order, or decree shall be a lien in that county for an initial period of 10 years from the date of the recording.

Id.

It is not disputed that Christine did not record the judgment in question. A number of Florida cases dispositively mandate that a creditor must comply with Florida Statute section 55.10 in order for a lien to attach to real property. See Dyer, 777 So. 2d at 1055 (a judgment did not become a lien on real property because the creditor did not comply with

-13-

Florida Statute section 55.10); <u>Butler v. Butler</u>, 870 So. 2d 239, 240 (Fla. 2d DCA 2004)(unless a creditor complies with the strictures of section 55.10, a judgment does not blossom into a lien.). The Court also agrees with the Debtor that "there is no authority that excepts equitable liens from the requirements of § 55.10." (Doc. # 9 at 15).

The Bankruptcy Court discussed the facts of <u>Dyer</u> and <u>Butler</u>, and pointed out how the facts presented here differ. Specifically, on April 11, 2016, the Court articulated its ruling:

> In <u>Dyer</u>, the wife, as part of an action for dissolution of marriage, obtained final judgments for attorneys' fees against the husband. Like the settlement agreement in this case, the judgments in <u>Dyer</u> included language that the judgments themselves constituted a lien on the real property that had been the parties' marital residence. Significantly, however, the property was titled only in the husband's name, and the Court expressly acknowledged that it was the husband's separate property.
> The wife eventually assigned her attorneys' fee judgments to a third party. The third party assignee, without recording the judgments in accordance with Florida Statute Section 55.10, commenced foreclosure proceedings. The trial court entered a final judgment of foreclosure that allowed the judgment creditor to proceed with a forced sale of the property. The husband appealed, and the Fourth DCA reversed.
> The Court held that the failure of the wife and her assignee to record the judgments resulted in there being no lien on the property. The Court rejected the argument that the language in the judgment itself converted the judgment into a lien.

-14-

But unlike the wife in <u>Dyer</u>, Christine is currently a record owner of the property. And unlike the wife in <u>Dyer</u> – who, as a judgment creditor, that is essentially a stranger to the property, who necessarily had to comply with Florida Statute Section 55.10 in order to acquire an interest in the property -- Christine does not need the assistance of Florida Statute Section 55.10 to hold a secured claim against the property.

In <u>Butler</u>, a husband and wife owned property as tenants in common, with each owning a separate, undivided, one-half interest in the property. As part of their divorce proceeding, the wife obtained three judgments against the husband, all three of which were recorded.

The trial court then entered a final summary judgment foreclosing the judgment liens that the Court found had arisen from the entry of the judgments and – from the entry of the judgments and recording of them, the three judgments, and the Court set a clerk's sale on the husband's 50 percent tenant-in-common interest in the property.

The appellate court reversed on the basis that the judgments had not matured into liens because the wife had not complied with the formalities of Section 55.10 when she recorded the judgments because the judgments did not include the wife's address and she had not filed an affidavit together with the judgments when she recorded them that did include her address.

Like <u>Dyer</u>, the wife in <u>Butler</u> was essentially a stranger to the husband's separate 50 percent ownership interest in the property. And as a judgment creditor, she was required to comply with Section 55.10 in order to obtain a judgment lien against the property.

The Florida Supreme Court long ago stated that the purpose of Florida Statute Section 55.10 is to enable judgment creditors to establish a lien on real property owned by the judgment debtor where the lien did not previously exist. That's <u>Nassau Realty Company v. City of Jacksonville</u>, 198 So. 581, a 1940 case from the Florida Supreme Court.

<u>Dyer</u> and <u>Butler</u> are distinguishable from this case because Christine is already on title to the

-15-

>     property as a 100 percent tenancy by the entireties
>     owner, and the property cannot be sold without her
>     cooperation and consent.  And for the purposes of
>     classifying her claim as secured or unsecured, her
>     ownership interest is the functional equivalent of
>     a lien.

(Doc. # 8 at 7-10).

The Bankruptcy Court erred in this analysis because Christine's interest in the Florida real property does not function as a security interest on property of the bankruptcy estate.  The Debtor's ownership interest in the Florida real property is the only portion of the property that is property of the bankruptcy estate.  Thus, Christine's ownership interest does not provide a secured claim on Debtor's property.  The Bankruptcy Court stated in its written opinion that "Christine is not attempting to enforce a judgment against Debtor's 50% ownership interest in the Property. Rather, she seeks payment for her own 50% ownership interest in the Property, to which she is entitled under the MSA and the Judgment." (Doc. # 5-13 at 5).  As stated by the Debtor, "The Bankruptcy Court is absolutely correct that [Christine] is seeking payment for her own 50% ownership, which is exactly why she does not have a secured claim on property of the estate." (Doc. # 9 at 17).  The Bankruptcy Court's determination that Christine has a secured claim is reversed

because Christine's interest in the Florida real property is not property of the estate, and a secured claim must secure property of the estate. 11 U.S.C. § 506(a). The Bankruptcy Court accordingly should have sustained the Debtor's objection to Christine's amended Claim # 11.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) The Bankruptcy Court's resolution of amended Claim 11 is reversed.

(2) The Clerk is directed to transmit a copy of this Order to the Bankruptcy Court and is thereafter directed to **CLOSE THIS CASE.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 18th day of November, 2016.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE